## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PENNY K. MANZI and JERRY S. MANZI, | |
| *Plaintiffs,* | |
| v. | Case No. |
| APPLE INC., | **JURY DEMAND** |
| *Defendant.* | |

## COMPLAINT

Plaintiffs, PENNY K. MANZI and JERRY S. MANZI, by and through their attorneys, COGAN & POWER, P.C., Complaining of Defendant, APPLE INC. (hereinafter "APPLE") and states as follows:

## JURISDICTION

1.     At all times relevant herein, Plaintiffs, PENNY and JERRY MANZI, were and are citizens and residents of the State of Illinois.

2.     At all times relevant herein, Defendant, APPLE was and is a citizen and resident of the State of California.

3.     At all times relevant herein, Defendant, APPLE was a corporation engaged in the sale, distribution, and manufacture of goods throughout the United States including within the State of Illinois and was otherwise authorized to do business in the State of Illinois.

4.     Because of the past and future medical expenses, past and future pain and suffering, and the past and future loss of a normal life incurred by the Plaintiffs relating to this claim, the controversy exceeds, exclusive of interests and costs, the sum specified in 28 USC §1332 of

$75,000.00, making the subject matter jurisdiction appropriate in this Court and is based upon diversity of citizenship.

5.     Defendant, APPLE intentionally availed itself to the laws and markets of Illinois through the promotion, marketing, distribution and sale of its MagSafe Adapter in Illinois.

6.     The events from which all of the causes of action listed in this petition stem occurred on January 17, 2018, thus, all causes of action are within their respective statute of limitations.

## FACTS

7.     Since the 1970s, APPLE has been engaged in the business of designing, manufacturing, marketing, distributing, and selling personal computers and related products and services through its own retail (and more recently, online) stores, direct sales, third party wholesalers and resellers.

8.     On or about February 2006, APPLE began designing, manufacturing, warranting, advertising, marketing, selling and providing the MagSafe Adapters at issue to consumers throughout the United States for use with its MacBook series laptop computers.

9.     On and before January 17, 2018, APPLE sold the MagSafe Adapter the Plaintiff, PENNY MANZI, was using as the only power source APPLE provides with and for its MacBook computer, which PENNY MANZI was also using.

10.     On and before January 17, 2018, APPLE made the following representation about the MagSafe Adapters: "The MagSafe Power Adapter is just that: a magnetic connection instead of a physical one. So, tripping over a power cord won't send your shiny new MacBook flying off a table or desk; the cord simply breaks cleanly away, without damage to either the cord or the system. As an added nicety, this means less wear on the connectors."

11.     On and before January 17, 2018, APPLE further boasts the MagSafe Adapter is the companion to its "state of the art" flagship portable computer.

12.     On and before January 17, 2018, APPLE has never sent out any notice, warning or recall or otherwise alerted Plaintiff of the MacBook computer of the dangers of and problems with the MagSafe Adapters.

13.     On and before January 17, 2018, APPLE has instead acknowledged problems of fraying, sparking, melting, and overheating associated with the MagSafe Adapter through its "extended warranty program" wherein the defendant states that customers who have "seen a spark" may be eligible for a replacement adapter free of charge provided there are no signs of accidental damage.

14.     On and before January 17, 2018, APPLE did not make the information contained in paragraph 14 above readily apparent to Plaintiff.

15.     On and before January 17, 2018, APPLE marketed, advertised, and warranted that the defective MagSafe Adapters were of merchantable quality fit for the ordinary purpose for which such goods were used and were free from defects or at a minimum, would not catch on fire.

16.     On and before January 17, 2018, APPLE intends and intended its customers believe its statements and representations about its MagSafe Adapters and to trust that its products are of the highest quality.

17.     On and before January 17, 2018, APPLE, as the MagSafe Adapter designer and manufacturer, possesses and possessed specialized knowledge regarding the composition of its MagSafe Adapter and it is in a superior position to know and learn about defects in its MagSafe Adapter.

3

18.     On and before January 17, 2018, APPLE knew or should have known of the dangers, including risk of the MagSafe sparking and catching fire, as the manufacturer and designer of the product.

19.     Despite said knowledge, APPLE provided no actual notice of the dangers of the defective MagSafe Adapters to Plaintiff.

20.     On and before January 17, 2018, Plaintiff PENNY K. MANZI suffered from Chronic Obstructive Pulmonary Disorder, asthma, and emphysema.

21.     On and before January 17, 2018, Plaintiff PENNY K. MANZI was supposed to be on oxygen whenever she was at home.

22.     On January 17, 2018, Plaintiff PENNY K. MANZI was using the Defendant's MacBook at her home, with the MagSafe Adapter, when a spark from the MagSafe Adapter ignited the oxygen Plaintiff was using.

23.     On January 17, 2018, Plaintiff PENNY K. MANZI's oxygen unit was set at 100%, number setting five, at the time the MagSafe Adapter shot off a spark causing her oxygen mask to ignite.

24.     On January 17, 2018, defendant APPLE's MagSafe Adapter defectively sparked and started a flash fire, engulfing the Plaintiff PENNY K. MANZI's face and skull in flames.

25.     On and before January 17, 2018, APPLE had a duty to ensure its MagSafe Adapter was fit for the ordinary or particular purposes for which the MagSafe Adapter was intended, APPLE had a duty to adequately test its MagSafe Adapter prior to releasing it for commercial sale.

26.     Instead, APPLE sold defective MagSafe Adapters, including the one owned by the Plaintiffs, that were not fit for their intended use.

27.     On and before January 17, 2018, APPLE had a duty to test for alternative designs of its MagSafe Adapter to avoid these destructive side effects.

4

## COUNT I – PRODUCT LIABILITY v. APPLE

1-27.  Plaintiff repeats and realleges paragraphs (1) through twenty-seven (27) above as though fully incorporated and set forth herein as paragraphs (1) through twenty-seven (27).

28.  APPLE was at all times prior herein and are still engaging in the business of designing, manufacturing, marketing and distributing the MagSafe Adapter.

29.  The MagSafe Adapter used by Plaintiff was in a defective condition and was unreasonably dangerous for the ordinary and foreseeable use by persons such as Plaintiff at the time of manufacturing and when it left the factory.

30.  APPLE intended the MagSafe Adapter be used by Plaintiff in the manner used by Plaintiff at the time the MagSafe Adapter was designed, manufactured, marketed, sold and distributed.

31.  The MagSafe Adapter's defective design, manufacture and lack of warning made it an inherently dangerous product that resulted in Plaintiff PENNY K. MANZI's serious and substantial personal injuries.

WHEREFORE, plaintiff, PENNY K. MANZI respectfully requests that this Honorable Court enter judgment on her behalf against defendant, APPLE INC., in an amount that will fully and fairly compensate her for all losses which are in excess of the jurisdictional amount.

## COUNT II – BREACH OF WARRANTY v. APPLE

1-27.  Plaintiff repeats and realleges paragraphs (1) through twenty-seven (27) of JURISDICTION and FACTS above as though fully incorporated and set forth herein as paragraphs (1) through twenty-seven (27).

28.  APPLE expressly and impliedly warranted that its product, MagSafe Adapter, was of merchantable quality and safe for its intended use and ordinary use, and fairly and accurately

5

represented to any and all users, including Plaintiffs, the MagSafe Adapter was free of inherently dangerous defects.

29. APPLE breached the above warranty as its MagSafe Adapter was not of merchantable quality, was unsafe and therefore unfit for its ordinary purpose for which it was designed and sole, was improperly and intentionally misrepresented by APPLE and was not free of defect.

30. As a proximate result of the aforementioned breach of warranty by APPLE, Plaintiff PENNY K. MANZI suffered serious and substantial personal injuries.

WHEREFORE, Plaintiff, PENNY K. MANZI respectfully requests that this Honorable Court enter judgment on her behalf against Defendant, APPLE INC., in an amount that will fully and fairly compensate her for all losses which are in excess of the jurisdictional amount.

## COUNT III – LOSS OF CONSORTIUM v. APPLE

NOW COMES plaintiff, JERRY S. MANZI, by and through his attorneys, COGAN & POWER, P.C. and Complaining of Defendant, APPLE INC. states as follows:

1-31. Plaintiff, JERRY S. MANZI, repeats and realleges paragraphs one (1) through thirty-one (31) of Count I as if fully set forth herein as paragraphs one (1) through thirty-one (31) herein Count III.

32. At all times relevant herein mentioned, plaintiff, JERRY S. MANZI was the legal spouse of PENNY K. MANZI.

33. As a proximate result of the aforesaid acts and/or omissions of defendant, APPLE INC. plaintiff, JERRY S. MANZI suffered a loss of consortium including but not limited to a loss of love, society, affection, relationship and companionship with his spouse, PENNY K. MANZI.

WHEREFORE, plaintiff, JERRY S. MANZI, demands judgment against defendant, APPLE INC. in an amount in excess of the jurisdictional amount which will fully and fairly compensate him for his losses.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Attorney for Plaintiffs

Thomas K Prindable
**COGAN & POWER, P.C.**
1 E Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 477-2500
(312) 477-2501(Fax)
tkprindable@coganpower.com